David H. Bernstein (dhbernstein@debevoise.com)
Michael Schaper (mschaper@debevoise.com)
Christopher J. Hamilton (cjhamilton@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

Attorneys for Plaintiff Bayer HealthCare LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――――――― x
                                          :
BAYER HEALTHCARE LLC,                     :
                                          :
                 Plaintiff,               :  11 CIV. 6347 (PKC)
                                          :
         v.                               :  ECF CASE
                                          :
CIPLA LTD., VERITAS PHARMA PTE. LTD. d/b/a OTC :
PET MEDS, RONIN VENTURES PTE. LTD. d/b/a  :
TRUSTED PET MEDS, OKPET.COM, ARCHIPELAGO  :
SUPPLIERS PTY LTD d/b/a FREEDOM-          :
PHARMACY.COM and USAPHARMACYPILLS.COM,    :
HEALTHY CHOICE PHARMACY.COM INC. d/b/a THE :
PHARMACY EXPRESS, SAVA MEDICARE LTD. and  :
ABC COMPANIES 1-100,                      :
                                          :
                 Defendants.              :
                                          :
――――――――――――――――――――――――――― x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A FINDING OF CIVIL CONTEMPT
<u>AND ORDER FOR SANCTIONS</u>**

23588196v7

Plaintiff Bayer HealthCare LLC ("Bayer") moves for civil contempt and sanctions against Veritas Pharma Pte. Ltd. d/b/a OTC Pet Meds ("OTC Pet Meds"), Ronin Ventures Pte. Ltd. d/b/a Trusted Pet Meds ("Trusted Pet Meds") and OKPet.com (collectively, "Defendants"), because Defendants have violated this Court's Default Judgment Order dated December 6, 2011 (the "Order") by failing to recall all infringing products, issue corrective advertising, file any statement of compliance and pay Bayer $100,000 in statutory damages. Moreover, OKPet.com is flouting this Court's orders by continuing to offer for sale gray market versions of Bayer pet medicines intended for sale outside of the United States, despite having been preliminarily and then permanently enjoined from doing so by this Court. *See* Preliminary Injunction Order, Nov. 3, 2011; Default Judgment Order, Dec. 6, 2011.

Defendants' refusal to comply is no mistake. Having operated through off-shore entities in order to avoid the reach of this Court, Defendants clearly have no intention to remedy their well-documented illegal activities, nor pay Bayer the statutory damages they owe it. Bayer thus seeks a finding of contempt against Defendants, and an award of sanctions designed to force the Defendants to comply with the Order, including (1) an order requiring the domain name registry that Defendants' websites use to change the registrar of record of the Defendants' domain names to a registrar selected by the Plaintiff, which will effectively shut down these websites; (2) an order requiring all banks, credit card companies, and payment processing companies to suspend all merchant services with the Defendants until the Defendants comply with the Order; (3) an order requiring search engine operators to discontinue the running of any

2

23588196v7

advertisements and preferential placements for the Defendants until the Defendants comply with the Order; (4) an order requiring all telecommunications companies providing telephone or facsimile services to the Defendants to suspend such services, until the Defendants comply with the Order; and (5) financial sanctions should Defendants continue in their refusal to comply with the Order.

I.  **Factual Background**

On November 3, 2011, this Court granted Bayer's motion for a preliminary injunction, and on December 6, 2011 this Court entered the following Default Judgment Order against Defendants[1]:

> *NOW THEREFORE, it is ORDERED, ADJUDGED and DECREED:*
>
> 1. *That each of OTC Pet Meds, Trusted Pet Meds and OKPet.com, each of their officers, agents, servants, employees and attorneys, and all parties in active concert or participation with them or any of them, are permanently enjoined from distributing, selling, offering for sale, advertising, promoting or displaying in the United States (including in any way to United States consumers), or being involved in the distribution, sale, offer for sale, advertisement, promotion, or display in the United States, of DA DOUBLE ADVANTAGE;*
>
> 2. *That each of OTC Pet Meds, Trusted Pet Meds and OKPet.com, each of their officers, agents, servants, employees and attorneys, and all parties in active concert or participation with them or any of them, are permanently enjoined from distributing, selling, offering for sale, advertising, promoting or displaying in the United States (including in any way to*

---

[1] Both of these Orders, as well as all other key orders and court filings were sent, as a courtesy, to the Defendants by e-mail. Declaration of Michael Schaper, dated Feb. __, 2012 ("Schaper Decl."), ¶14. Thus, OTC Pet Meds' statement to the Court in its January 27, 2012 letter that it had not heard from Bayer since September 21, 2011 is demonstrably false.

>  *United States consumers), or being involved in the distribution, sale, offer for sale, advertisement, promotion, or display in the United States, of any pet medicine products made by foreign affiliates of Bayer that are not intended for sale in the United States, including but not limited to ADVANTIX®;*

3. *That each of OTC Pet Meds, Trusted Pet Meds and OKPet.com, each of their officers, agents, servants, employees and attorneys, and all parties in active concert or participation with them or any of them, are enjoined and restrained from making any false or misleading statements in connection with the advertising, promotion or sale in the United States of DA DOUBLE ADVANTAGE (or the same product under a different name), including any statements that DA DOUBLE ADVANTAGE (or the same product under a different name) is "equivalent" to or a "generic" version of any Bayer pet medicine product sold in the United States;*

4. *That each of OTC Pet Meds, Trusted Pet Meds and OKPet.com shall recall from any and all U.S. channels of distribution any and all infringing products and promotional materials and take affirmative steps to dispel the false impressions that heretofore have been created, including but not limited to corrective advertising directed to the trade, retail establishments and consumers;*

5. *That OTC Pet Meds shall pay Bayer statutory damages of $100,000 USD pursuant to 15 U.S.C. § 1117(c) by reason of its counterfeiting of Bayer's federally registered trademarks;*

6. *That Trusted Pet Meds shall pay Bayer statutory damages of $100,000 USD pursuant to 15 U.S.C. § 1117(c) by reason of its counterfeiting of Bayer's federally registered trademarks;*

7. *That OKPet.com shall pay Bayer statutory damages of $100,000 USD pursuant to 15 U.S.C. § 1117(c) by reason of its counterfeiting of Bayer's federally registered trademarks; and*

8. *That each of OTC Pet Meds, Trusted Pet Meds and OKPet.com shall file with the Court and serve on counsel for Bayer within thirty (30) days after entry of this Order, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which that Defendant has complied with the Order.*

4

Despite this Court's Order, the Defendants have refused to pay Bayer statutory damages.  *See* Schaper Decl.¶ 8.  The Defendants have also failed to provide to this Court any statement pursuant to 15 U.S.C. §1116(a) (which was due on January 5, 2012), nor have they given any indication to Bayer that they have complied fully with any portion of the Order, including that they have ceased their illegal activities, recalled any counterfeit products, or taken steps to dispel the any false impressions they may have made on consumers.  *Id*. at. ¶¶ 7, 13.

Bayer has observed some instances of partial compliance.  Defendant Trusted Pet Meds appears to have shut down the website through which it made the sales of infringing products at issue in this case.  *Id.* at ¶ 9.  Defendant OTC Pet Meds appears to have complied with the Order's requirement that it cease selling both DA DOUBLE ADVANTAGE and ADVANTIX through the website otcvetmeds.com.  OTC Pet Meds has also recently written to Bayer stating the same, and informed Bayer of its intent to mail this Court a letter stating that it is no longer selling or marketing DA DOUBLE ADVANTAGE or ADVANTIX.  *Id.* at ¶ 11.  Despite this, Bayer has no way of knowing whether Defendants or their agents have continued to sell such products using other websites – which would be prohibited by the Order – because none of the Defendants has filed or served a written statement of compliance.  *Id.* at ¶ 7.

Additionally, defendant OKPet.com has openly continued to engage in illegal activities by advertising for sale gray-market ADVANTIX products—the very act for which Bayer sought an injunction.  *Id.* at ¶ 15.  Screenshots show that OKPet.com has not taken any steps to change the way it markets its products, and continues to be clearly

5

targeting U.S. consumers.  *Id*.  *See also* Declaration of John Shoenfelt, dated Sept. 12, 2011 (Docket # 11), at ¶¶ 26, 34 (describing how OKPet.com specifically targets U.S. consumers).  Moreover, OKPet.com is using Google and other search engine operators to advertise its sale of gray-market goods:  When a consumer types in "ADVANTIX," "K9 ADVANTIX" or "ADVANTAGE" into Google, Yahoo! or Bing's search bar, OKPet.com's website is among those highlighted at the top of the page as an "ad." Schaper Decl. ¶ 16.  Thus, not only has OKPet failed to comply with this Court's previous orders, but it has done so openly and willfully.

      Lastly, as this Court is aware, the Defendants are off-shore companies that rely on the internet to conduct their business.  *See* Declaration of John Shoenfelt in Support of Motion for Alternative Service, dated Sept. 12, 2011 (Docket # 14), at ¶ 4 (describing investigative findings on Defendants' lack of U.S. presence); Declaration of John Shoenfelt in Support of Preliminary Injunction Motion, dated Sept. 12, 2011 (Docket # 11), at .¶¶ 4, 13, 22, 30 (noting that Defendants are off-shore businesses with little or no presence in the United States).  Defendants also depend on credit card companies and payment processing companies to enable consumers in the United States to pay online. *See* Declaration of John Shoenfelt in Support of Preliminary Injunction Motion, dated Sept. 12, 2011 (Docket # 11), Exs. 11, 14 and 17 (screenshots indicating types of payments accepted by websites).

II.   **Argument**

Defendants' violations of this Court's Default Judgment Order constitute acts of civil contempt under 18 U.S.C. § 401. A party is in civil contempt for failure to comply with a court order when the order is clear and unambiguous, the proof of noncompliance is clear and convincing, and the party has not made a diligent attempt to comply with the order in a reasonable manner. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F. 3d 645, 655 (2d Cir. 2004). There is no need to show that the violation was willful. *Id.*

That standard is easily met here. The Court's Default Judgment Order is clear and unambiguous and the Defendants have not yet paid Bayer, as required by that Order, nor have they submitted a sworn affidavit of compliance with the other provisions of the Court's Order. Although OTC Pet Meds intends to submit (or perhaps has submitted) a letter to the Court stating it is no longer selling the infringing products, it has not paid Bayer nor indicated any steps that it has taken to recall those products or dispel any consumer confusion arising from its marketing of them.[2] Defendant OKPet.com has also continued to market for sale gray market goods, and has paid search engines such as Google to advertise the sale of such products, thereby continuing its illegal activities and causing further harm to Bayer. Accordingly, Bayer is entitled to a finding of contempt as

---

[2]   As noted above, the letter also states that OTC Pet Meds has not heard from Bayer since September 21, 2011, a position that is clearly undermined by the fact that OTC Pet Meds references Bayer's January 25, 2012 letter to this Court. Evidence of other correspondence with OTC Pet Meds after September 21, 2011 is included as Exhibit 4 to the Schaper Declaration.

7

to the Defendants.  *See Dell Inc. v. Compudirect, Inc.*, 316 Fed. App'x. 35, 35, 37 (2d Cir. 2009) (failure to timely file proof of compliance and evidence of further attempts to sell infringing products on eBay supports finding of contempt); *Mattina v. Saigon Grill Gourmet Rest. Inc.*, No. 08 Civ. 3332, 2009 WL 323507, at *7 (S.D.N.Y. Feb. 4, 2009) (finding clear and convincing evidence that defendant failed to file sworn affidavit about its compliance with a consent judgment, as required by that order); *Mingoia v. Crescent Wall Sys.*, No. 03 Civ. 7143, 2005 WL 9917733, at *2 (S.D.N.Y Apr. 26, 2005) (finding contempt where order clearly sets forth obligation to pay a sum certain and failure to pay was failure to comply with the order); *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 294-95 (S.D.N.Y. 2000) (advertising and sale of infringing products on website accessible within the United States in violation of preliminary injunction constitutes contempt).

     Once a Court finds that a defendant is contemptuously refusing to comply with a Court order, it has broad discretion to fashion a remedy that is designed to coerce the defendant into compliance.  *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982); *see also Paramedics,* 369 F.3d at 657 (civil contempt sanctions may be either coercive or compensatory, and Court should consider the "probable effectiveness of any suggested sanction in bringing about [compliance]").  In this case, financial sanctions alone are unlikely to result in compliance because the Defendants have refused to pay Bayer the sums they already owe; do not appear to have any assets in the United States; and it will be difficult to Bayer to execute a judgment against them in their respective countries.  Accordingly, Bayer seeks a combination of financial and other

8

sanctions reasonably tailored to coerce the Defendants into compliance. *See generally Novartis Animal Health US, Inc. v. Abbeyvet Export Ltd.*, slip. op., 05 CV 4688 (S.D.N.Y. February 3, 2006) (granting variety of non-monetary sanctions to coerce website into compliance with court's previous orders).

First, Bayer seeks an order preventing Defendants from using the domain names through which they engaged in infringement, and through which OKPet.com has continued its contemptuous activity. Although Defendants may believe they are beyond this Court's reach, the registry of all internet domain names in the .com global top level domain, Verisign, Inc., including those used by Defendants, is a United States entity. In its role as the .com registry, Verisign has the ability and authority to disable Defendants' websites, and it has shown a willingness to comply with U.S. court orders regarding domain names in its registry. *See Virgin Enters. Ltd. v. Enom, Inc.*, No. 08 Civ. 0328, 2008 WL 4054418, at *3 (S.D.N.Y. Aug. 18, 2008) (recognizing Verisign as the registry of the generic top level domain ".com" and that it "can be ordered to implement transfers of ".com" names."). Given that Defendants relied on these domain names to conduct their illegal activities, and because Defendants have no other known assets in the United States, this is likely to be an effective way to both enforce the Court's Default Judgment Order and to coerce Defendants' compliance with it. Bayer accordingly requests an order directing Verisign change the registrar of record of the domain names used by the Defendants for the sale of enjoined products to a registrar selected by the Plaintiff, which

subsequently shall register the domain names in the name of Plaintiff, unless and until Defendants comply with the Court's Order.[3]

A similar remedy was granted by this Court in a case involving the sale of gray market cigarettes. In *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228 (S.D.N.Y. 2004), the Court ordered the defendant's domain names transferred to plaintiff. The Court recognized this as "an efficacious means to enforce the Judgment, [through] a means inherent in the very same technology by which [defendant] has to date been able to violate it with impunity." *Id.* at 245. Here, Bayer similarly seeks an order that would shut down the Defendants' websites until such time as they indicate a willingness to comply with this Court's Order. *See also Novartis*, at ¶ 1 (ordering Verisign to block the use of domain names through which defendant was engaged in infringing activities).

<u>Second</u>, the Court also should grant an order requiring all banks, credit card companies and payment processing companies who receive notice of the order to suspend all merchant services with the Defendants until the Defendants comply with the Court's orders. Again, because the Defendants rely on credit card companies to process payments from consumers in the United States, this will likely be an effective means of coercing Defendants into compliance with this Court's Order. *See Novartis*, at ¶ 5 (ordering payment processing companies to cease providing services to contemptuous defendant).

---

[3] Bayer's research has indicated that the Defendants operate from the following domain names: www.otcvetmeds.com, www.okpet.com, and www.trustedpetmeds.com. Schaper Decl. ¶ 4.

Third, to prevent OKPet.com's use of search engines to advertise its contemptuous sales of Bayer animal health products to U.S. consumers, and the Defendants generally from advertising their websites, Bayer seeks an order requiring search engine operators, including Google, Bing and Yahoo!, to discontinue the running of any advertisements for Defendants unless and until Defendants comply with the Court's Order. *See Id*. at ¶ 6.

Fourth, Bayer seeks to block the Defendants' ability to transact business with U.S. consumers by telephone and facsimile through toll-free numbers, and seeks an order from this Court requiring all persons and entities that provide telecommunications services to the Defendants to suspend all U.S. telephone and facsimile services for the benefit of Defendants.[4] *Id.* at ¶ 4.

Fifth, to provide the Defendants with financial incentive to comply, the Court should order the Defendants to pay Bayer a fine of $1,000.00 for every calendar day until they are in compliance with the Default Judgment Order. *See Versace*, 87 F. Supp. 2d at 297; *see also Gucci America, Inc. v. Gucci*, Case No. 07 Civ. 6820, 2009 WL 440463, at*7 (S.D.N.Y. Feb. 20, 2009) (ordering contempt sanctions in the amount of $1000 per day for each day Defendant fails to comply with Temporary Restraining Order).

---

[4] Bayer's research indicates the Defendants have used the following phone numbers for business: OKPet.com at 877-616-7256, and OTC Vet Meds at 212-465-2548 Schaper Decl. at ¶ 18.

11

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court enter an order finding the Defendants in contempt of the Default Judgment Order and awarding Bayer sanctions, as set forth in the accompanying proposed order.

Dated: New York, New York
February 6, 2012

>Respectfully submitted,
>
>DEBEVOISE & PLIMPTON LLP
>
>
>By: /s/ Michael Schaper
>    David H. Bernstein (dhbernstein@debevoise.com)
>    Michael Schaper (mschaper@debevoise.com)
>    Christopher J. Hamilton (cjhamilton@debevoise.com)
>919 Third Avenue
>New York, New York 10022
>Telephone (212) 909-6696
>Fax (212) 521-7696
>
>*Attorneys for Plaintiff Bayer HealthCare LLC*